## LATTING v. OWASSO MFG. CO.

### (Circuit Court of Appeals, Eighth Circuit. October 6, 1906.)

### No. 2,305.

1. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

The assigning of a wrong reason by a trial judge for directing a verdict for a defendant after the close of the evidence is not prejudicial to the plaintiff, nor ground for a reversal of the judgment, if the direction of the verdict was right upon other grounds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3417. ]

2. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCES.

The death of a plaintiff's intestate, who was an employé in defendant's factory, caused by the falling of an elevator therein, *held*, under the evidence, not due to any defect in the elevator or its operating machinery, or to any want of care or proper inspection, which would render defendant liable therefor, but to the thoughtless act of a fellow servant of the deceased, which could not have been foreseen and against the effect of which the safety device was not designed to guard.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Plaintiff's intestate was injured by the fall of an elevator in the factory of the Owasso Manufacturing Company, and as a result he shortly afterwards died. The charge in the petition is that the company negligently permitted the safety brakes of the elevator to become so defective that they failed to respond, and that it did not exercise reasonable care in inspecting and maintaining in proper condition the elevator and its various appliances. The deceased was an employé of the company, his position being that of foreman upon the second or upper story of the factory building. The building was of two stories with a basement beneath. The elevator was used for the movement of materials and manufactured products and for the ascent and descent of the employés. It was an ordinary platform elevator, lifted and lowered by two cables extending from a revolving drum below, operated by steam power, upwards to two wheels or pulleys, and thence downwards to a transverse beam at the top of the elevator. The weight of the elevator and its contents in ascent or descent was upon these cables. Immediately under and about five inches below the transverse beam was a steel spring extending horizontally with the beam almost across the width of the elevator. The strain upon the cables upon which the elevator hung was likewise communicated to the spring. Each end of the spring was pivoted to and near the middle of a metallic dog, the upper end of which was also pivoted to the beam, and the lower end of which was sharpened so as to pierce, in case of emergency, two perpendicular timbers extending the entire length of the elevator shaft and along opposite sides thereof. These timbers, or guides as they were called, and shoes fixed upon the movable elevator, kept the elevator steady in its course. When the strain caused by the weight of the elevator and its contents was upon the cables, and therefore also upon the spring, the latter was bent upward toward the lower part of the transverse beam, and consequently the dogs at either end of the spring were withdrawn from contact with the perpendicular guides. The purpose of this contrivance was that, if there should be an unexpected breaking of the cable, a release of the strain thereon, and also a resultant release of the tension upon the spring, the dogs would be thrown out at the sides, would pierce the perpendicular guides and so prevent the precipitation of the elevator to the bottom. There were also two operating cables which controlled the movement of the drum upon which the elevator cables were wound and unwound. A pull upon one of these operating cables shifted a belt at the machinery below and caused the elevator to ascend. A similar manipulation of the other operating cable caused it to descend. The elevator was easily and customarily operated by those who were upon it.

Upon the occasion in question, two employés were taking an empty truck up to the second floor of the factory. When they placed it upon the elevator at the floor below one end of it was pushed beyond the elevator platform, and when they reached the second story the projecting end of the truck encountered the floor of that story, and the truck was tipped up and became tightly wedged between the elevator platform and the floor. One of the employés quickly got off of the elevator, went around to the side thereof, and pulled the operating cable for a descent of the elevator. The deceased went to the assistance of the other employé, wrenched the tilted truck from its wedge-like position, and, the safety dogs not engaging the perpendicular guides, the elevator with the men upon it instantaneously fell to the bottom of the shaft, causing the death complained of. At the conclusion of the evidence the trial court, momentarily overlooking the primary duty of the company to exercise reasonable care to furnish its employés with reasonably safe appliances and to maintain them in like condition, directed the jury to return a verdict for the defendant upon the ground that the employé whose duty it was to inspect the elevator was a fellow servant of the deceased. But, after the verdict was returned and the jury discharged, the court announced that it rested its action upon the absence of evidence of negligence warranting a recovery.

H. F. Auten and J. H. Carmichael, for plaintiff in error.
Ashley Cockrill and J. M. Moore, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The case was fairly tried. Full opportunity was given the plaintiff to prove his cause of action, if he had one. No obstacle, whether in the reception or rejection of evidence or otherwise, that impeded or prevented him from doing so, was erroneously interposed during the trial. Therefore, if at the conclusion of all of the evidence the absence of a cause of action was so clearly manifest that it was the duty of the trial court to direct a verdict for the defendant, it is not material that in the discharge of that duty a wrong reason was at first assigned. No possible prejudice to the plaintiff could have resulted from the selection of the wrong ground for the action of the court. He could not have been misled to his detriment. He was through with his proofs, and if they were insufficient the defect was past cure. In such a case, so circumstanced, if the destination was right it matters not what road was taken to reach it. If, as the court held after a verdict had been directed and returned upon an untenable theory, there was no substantial evidence warranting a recovery by the plaintiff, the verdict should not be disturbed.

We are of the opinion that the plaintiff made no case. The mere fact that the elevator fell upon the occasion in question does not give rise to a presumption or inference of negligence, since the deceased was an employé of defendant, and in such cases the doctrine res ipsa loquitur does not apply. Railway Co. v. O'Brien, 67 C. C. A. 421, 132 Fed. 593. The evidence conclusively showed that the elevator was of an approved pattern, in general use, made by a responsible concern, and had given very satisfactory service for some years. It also appeared that it had frequently been examined, and that a commendable degree of care had been exercised in inspection and supplying new parts as conditions required. About six months before the accident, the elevator was overhauled, and new guides upon which

it moved in ascent and descent were inserted. The plaintiff's contention that the spring was too weak to operate the safety dogs is without support, save in the testimony of one Bull, who swore that while he was employed in the factory the dogs failed to work and the elevator fell to the bottom several times. This testimony is at variance with that of all of the other witnesses; but, giving it all of the effect that can properly be claimed for it, it should be said that the occurrences related by Bull happened two or three years before the accident in question and before the elevator was overhauled. Undisputed evidence showed that, several times after Bull left the service of defendant, the last being but a few days before the accident that befell the deceased, the elevator suddenly started to fall, and the safety device operated effectually and checked the descent.

There is no doubt that, when the deceased got upon the elevator platform where it was wedged at the second floor, another employé pulled the operating cable for a descent and caused the drum below to so revolve that the lifting cables, upon which the elevator hung, unwound; and, when the end of the truck was wrenched by deceased from between the elevator platform and the second floor of the building, and the elevator thus released began to fall, the hanging weight of the unwound cables, together with the friction of their passage over the wheels or pulleys above the elevator, prevented the spring from straightening out and sending the points of the dogs into the guide timbers. This was an unusual and exceptional condition caused by the ill-considered, thoughtless act of a fellow servant, and against which the safety device was not designed to guard. Negligence of the defendant cannot be predicated upon it.

It is also claimed that the elevator guides were placed too far from the points of the dogs to permit of operation, even when there was no tension upon the spring. This claim is the result of a misapprehension of the testimony of a witness who described the structure after it had been overhauled. He said that the play between the guiding shoes of the elevator and the upright guides upon which they moved was a half inch on each side, not an inch and a half, as contended. The foregoing conclusions dispose of the case.

The judgment is affirmed.