BUSH v. BRANSON, Sheriff and Collector, et al.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1918.)

No. 4958.

1. COURTS ⊕➾366(1)—FEDERAL COURTS—PRECEDENTS.

Decisions of a state Supreme Court, construing provisions of the state Constitution, are conclusive on the national courts.

2. CONSTITUTIONAL LAW ⊕➾70(1)—ENACTMENT—NOTICE—REVIEW BY COURTS.

The Legislature of Arkansas is the sole judge whether the requirements as to notice of local and special bills have been complied with, and if the Legislature chooses to disregard such requirements no issue on the subject can be raised in the courts.

3. HIGHWAYS ⊕➾136—ESTABLISHMENT—PROPERTY SUBJECT TO TAX.

Under the Arkansas Constitution, the property of a railroad can be assessed for benefits derived from a highway improvement district.

4. HIGHWAYS ⊕➾122—ASSESSMENTS—RAILROAD PROPERTY.

As the state tax commission, after assessing railroad property, certifies the assessment to each county, and it thereafter becomes the assessment of the county in the same manner as if made by the county assessor. Sp. & Priv. Acts Ark. 1911, p. 642, providing for the establishment of a highway district, which in section 5 declares that it is ascertained and declared that all real property within the district, including railroads, will be benefited by the building of the highway more than the cost thereof as appropriated in the county assessment of each piece of property within the district, is not invalid, as providing for assessment of railroad property by county officials.

5. HIGHWAYS ⊕➾122—ASSESSMENTS—RAILROAD PROPERTY.

As the state tax commission, in assessing railroad property, includes not only the tangible property, but also the franchise, which is intangible property, Sp. & Priv. Acts Ark. 1911, p. 642, declaring in section 5 that it was ascertained that all the real property within the district, including railroads, would be benefited by the building of the highway provided for, more than the cost thereof as appropriated in county assessment, is invalid, under Const. Ark. art. 16, § 5, providing for uniformity of taxes, because, as the franchise tax was included in the railroad company's assessment. its property was taxed at a higher rate than other real property in the district.

6. HIGHWAYS ⊕➾140—IMPROVEMENT DISTRICT—ASSESSMENT.

The Legislature of a state may charge on the property benefited the cost of a local improvement, such as a highway, either according to valuation, or superficial area, or frontage.

7. CONSTITUTIONAL LAW ⊕➾290(1)—DUE PROCESS OF LAW—WHAT CONSTITUTES.

The state may by statute directly, or by appropriate legal proceedings, fix the basis of taxation or assessment for a local improvement, without violating the due process clause of Const. U. S. Amend. 14; but an arbitrary exercise of such power is confiscation, in violation of such provision.

8. HIGHWAYS ⊕➾136—IMPROVEMENT DISTRICT—PROPERTY SUBJECT TO TAX.

Under Sp. & Priv. Acts Ark. 1911, p. 642, providing for the establishment of a highway, and declaring in section 5 that the real property in the district, including railroads, shall be subject to assessment, rolling stock and materials belonging to the railroad company, being declared personalty by Const. Ark. art. 17, § 11, are not subject to assessment.

9. CONSTITUTIONAL LAW ⊕➾290(1)—DUE PROCESS OF LAW—CONFISCATION.

While a railroad company's property may be assessed for road, bridge, and other improvements, when benefited, an assessment, when no advantage or benefit from the improvement results to its property, is confiscation.

⊕➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. APPEAL AND ERROR &#9090;854(2)—REVIEW—REVERSAL.

    A decree which is correct will not be reversed because the trial court gave an erroneous reason.

11. APPEAL AND ERROR &#9090;1009(4)—REVIEW—FINDINGS—EQUITY CASES.

    On appeal in an equity case, the facts as well as the law are open for consideration, and a finding of the trial judge, while entitled to high consideration, will be reversed, if clearly against the weight of the evidence.

12. HIGHWAYS &#9090;148—SPECIAL ASSESSMENTS—EVIDENCE.

    In a proceeding to enjoin the collection of special assessments for construction of a highway, imposed by Sp. & Priv. Acts Ark. 1911, p. 642, on the property of a railroad company, evidence *held* to show that the railroad was not benefited by the improvement, and hence collection of the assessment would be enjoined.

13. HIGHWAYS &#9090;137—ASSESSMENTS—EQUITABLE ESTOPPEL—NATURE OF.

    For more than three years after the enactment of a special act creating a highway district and imposing assessments, no steps for the construction of the highway were taken. In the meantime a representative of the railroad company, whose property was illegally assessed by the act, was advised by the attorney for the contractors that he would advise against his clients' accepting for the work bonds provided for in the act. Some five years after passage of the act, the highway having been constructed, the railroad company sued to enjoin collection of the assessments, imposed under the act, which would be due that year. *Held* that, as neither the contractors nor the purchasers of the bonds issued by the district were parties, the railroad company could not be deemed estopped to question the validity of the assessments against its property, for no estoppel in pais can be created, except by the conduct which the party setting up the estoppel has the right to rely upon, and does in fact rely upon.

Appeal from the District Court of the United States for the Western District of Arkansas; F. A. Youmans, Judge.

Bill by B. F. Bush, receiver of the St. Louis, Iron Mountain & Southern Railway Company, against J. H. Branson, Sheriff and ex officio Tax Collector, and others. From a decree for defendants, complainant appeals. Reversed, with directions.

W. L. Curtis, of Sallisaw, Okl., and Thomas B. Pryor, of Ft. Smith, Ark., for appellant.

C. A. Starbird, of Alma, Ark., and George B. Rose, of Little Rock, Ark. (W. E. Hemingway, D. H. Cantrell, J. F. Loughborough, and V. M. Miles, all of Little Rock, Ark., on the brief), for appellees.

Before SANBORN, Circuit Judge, and TRIEBER, District Judge.

TRIEBER, District Judge. The issue involved is the liability of the appellant, the receiver of the St. Louis, Iron Mountain & Southern Railway Company, duly appointed in a proceeding to foreclose a mortgage executed by the railway company, for assessments on the railroad property for the construction of a road by a road district, created by a special act of the General Assembly of the state of Arkansas, approved April 28, 1911. Act 228, Session Acts of Arkansas, page 642.

The legality of the assessment is attacked upon several grounds. (1) That under the provisions of the act (section 5) the railroad's property was assessed on its 3.6 miles within the district for a sum

&#9090;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

equal to 28 per cent. of the entire cost of the road. (2) That the assessment not only included the realty of the railroad, but also its rolling stock and materials, which under the Constitution and laws of the state of Arkansas are personalty, amounting to $6,770, the tax thereon being $44.59 annually for the term of 20 years; that the latter is in violation of section 11, art. 17, of the Constitution of the state and section 5 of this act, and also in violation of the equal protection clause of the Fourteenth Amendment, no other person's or corporation's personal property being so assessed. (3) That section 5 of the act provides that the county assessment is adopted, as conclusively determining the benefits from the construction of the road, and that under the laws of the state the property of the railroads is not assessed by county assessors, but by the state tax commission. (4) That the state tax commission is required by the laws of the state to include in the assessment of the railroad property the value of its franchise, in addition to its tangible property, and therefore places a greater burden on the railroad than on other property, in violation of the Constitution of the state and the Fourteenth Amendment. (5) That the act was enacted without notice or investigation, and arbitrarily fixed the charge, in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States. (6) That the assessment is void, because based on the mileage basis of defendant's property, whereas all other property is on the acreage basis. (7) It is also claimed that the tax is void, so far as it taxes the property of the railroad, because it is in no wise benefited by the building of the road. (8) That the act creating the district is in violation of the constitutional provision of the state of Arkansas (section 26, art. 5), this being a special act, and no notice thereof was published, as required by that constitutional provision.

[1-3] So far as provisions of the state Constitution are affected, their construction by the Supreme Court of the state is conclusive on the national courts. This disposes of the assignment of error about local and special bills, notice of which had not been published, as it is the settled law of the state that the Legislature is the sole judge whether this provision has been complied with, and if it chose to disregard it, and passed a bill without notice having been published, no issue upon the subject can be raised in the courts. Davis v. Gaines, 48 Ark. 370, 385, 3 S. W. 184; Waterman v. Hawkins, 75 Ark. 120, 86 S. W. 844; Caton v. Drainage Dist., 87 Ark. 8, 112 S. W. 145. This also applies to the contention that the property of the railroad cannot be assessed for benefits derived from an improvement district under the Constitution of the state. That it may be was decided in St. Louis & San Francisco R. R. Co. v. Bridge District, 113 Ark. 493, 168 S. W. 1066.

[4] Does the assessment of the property of the railroad tax it equally with other property in the district, as required by section 5, art. 16, of the Constitution of the state and the Fourteenth Amendment?

That this provision of the Constitution applies to improvement districts was determined in Davis v. Gaines, supra. The claim that

section 5 of the act, which makes the county assessment of the property within the district, including railroads, the benefit to the property, is void, because the property of the railroad is assessed by the state taxing board, and not by the county assessor, is untenable, for the state tax commission, after making the assessment, certifies it to each county, and thereupon it is put upon the assessment books, and thereafter becomes the assessment of the county in the same manner as if made by the county assessor. The act does not say "the assessment made by the county assessor," but uses the words "county assessment."

[5] But the assessment of the railroad property by the state tax commission differs materially from that made by the county assessors, as it includes, not only the value of all the tangible property of the railroad company, but also the intangible property, called the franchise, thereby imposing on it a higher rate of taxation than on all other property of the district, which is clearly in violation of section 5, art. 16, of the Constitution of the state (Ft. Smith, etc., Bridge Co., Ex parte, 62 Ark. 461, 36 S. W. 1060; Bank of Jonesboro v. Hampton, 92 Ark. 492, 123 S. W. 753; State ex rel. v. Meek, 127 Ark. 349, 192 S. W. 202), and the equal protection clause of the Fourteenth Amendment.

[6] The power of the Legislature of a state to charge the cost of local improvements, either according to valuation, or superficial area, or frontage, cannot be questioned. Webster v. Fargo, 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912; St. Louis Southwestern R. R. v. Board of Directors, 81 Ark. 562, 99 S. W. 843; Board of Directors v. Crawford County Bank, 108 Ark. 421, 158 S. W. 149; Board of Improvement v. S. W. Gas & Electric Co., 121 Ark. 105, 180 S. W. 764.

[7, 8] The act of the General Assembly, which declared the benefits to the property by the building of the road to be more than the cost thereof, as shown by the county assessment of each piece of property within the district, it is claimed is not due process of law, and therefore void. It is charged in the complaint that the act was passed without any hearing or notice being given, giving the property owners an opportunity to be heard before the enactment of the law. This is not denied, nor is there any provision in the act giving the taxpayer an opportunity to be heard on the assessment of the benefits, or appeal to any court or other tribunal. That a state may by statute directly, or by appropriate legal proceeding, fix the basis of taxation or assessment, without violating the due process provision of the national Constitution, unless it is palpably arbitrary, and a plain abuse, is beyond question. The latest cases on this subject are Wagner v. Baltimore, 239 U. S. 215, 36 Sup. Ct. 66, 60 L. Ed. 230; Houck v. Little River Drainage Dist., 239 U. S. 254, 262, 36 Sup. Ct. 58, 60 L. Ed. 266; Myles Salt Co. v. Board of Commissioners, 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392. But such power, arbitrarily exercised, imposing a burden without a compensating advantage of any kind, amounts to confiscation, and violates the due process provision of the Fourteenth Amendment. Myles Salt Co. v. Board of Commissioners, supra. In Gast v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct.

254, 60 L. Ed. 523, a law establishing a paving district, levying the cost of paving on property fronting on the street, based on area without providing for equal depth of the assessment district, was held to be void, reversing the decision of the Supreme Court of the state of Missouri. In Myles Salt Co. Case, the court, in reversing the decision of the Supreme Court of Louisiana, said:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. Wagner v. Baltimore, ante [239 U. S. 207, 36 Sup. Ct. 66, 60 L. Ed. 230]. We are not dealing with motives alone, but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations, not of the improvement of plaintiff's property, but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

And when assessments are thus imposed without the opportunity of having them reviewed by some authority, a court of equity may unquestionably interpose its protective arm to prevent wrong and injustice.

The pleadings and evidence establish the following undisputed facts: That in the assessment of benefits of the complainant there was included rolling stock and material of the value of $6,370. As this is clearly personalty under the laws of the state (section 11, art. 17, of the Constitution of Arkansas), it was not subject to assessment under the act, which expressly limits the assessments to real property.

The contemplated road begins at the opposite end of the town of Alma from where the railroad tracks and station are, one-quarter of a mile from them, and no portion of the road connects with the railroad's right of way. In addition to this, between one-eighth and one-quarter of a mile of the road is outside of the limits of the district.

[9-12] The undisputed facts also show that all the realty in the district, except that of the plaintiff, is assessed on the acreage basis. If the property of the railroad company had been assessed on the acreage basis, as the other realty was (there are 7,700 acres in the district), its assessment would have been on 53 acres, and the taxes to be paid by the railroad would have been .0071 per cent. of the entire assessment, instead of being 28 per cent. Whether this is fatal need not, in view of the conclusions reached on other issues, be determined herein. As to the benefits to be derived by the plaintiff railroad, the testimony of Mr. White, the engineer of maintenance of way of the railroad company, of Mr. Brown, who is in charge of the engineering department of that division of the plaintiff, of Mr. Morse, the superintendent of the plaintiff's road, and of Mr. Warden, the assistant engineer of the road, is to the effect that after a careful examination of this road, and being familiar with that section of the state and the conditions, the construction of this road will in no wise benefit the railroad, enhance its value in any way, or any portion thereof, or facilitate its

operation, or add to its traffic, and that the distance from the place of connection with the other road is 4½ miles further to Van Buren than to Alma.

On the part of the defendants, Dr. Crigler testified that he has for years resided at Alma, and is acquainted with this road; that in wet times it was, before the improvement was made, practically impassable; that the greater per cent. of the people adjacent to the town of Alma used the road in coming to and going from Alma; that before the construction of this road many of them went to the town of Van Buren, during the wet season, to do their trading, while in good weather they would come to Alma; that in 1914 a large gas belt was discovered near there, and perhaps some of the gas pipes used in the gas field were shipped over the plaintiff's road, and unloaded at Alma, and carried over this new road. He also states that all the produce brought over this road to Alma is shipped out over plaintiff's railroad, and for this reason it is his opinion that the railroad is benefited by the road. On cross-examination he testified that the construction of the road was begun in 1915.

Mr. Cravens testified that he is a merchant residing at Alma, buys and sells farm produce, and is one of the commissioners of the road district; that he is familiar with the roads in and out of town, and, while there are fair roads in and out of the town, this improvement district road carries 50 to 60 per cent. of the traffic; that the old road, before the improvement was made, was a fairly good road, except in wet weather, and sometimes it was impossible to get through. It intersects with the road from Van Buren to Yoestown, 3½ miles south of Alma. He believes that 50 per cent. of the produce coming in to merchants and going out of the town of Alma comes over this road, and the building of the road increased the tonnage of the railroad. He does not know the amount of the tonnage, or the amount of stuff that goes out of Alma, but that practically all farm produce brought into Alma over this new road is shipped out over the Iron Mountain Railroad. On cross-examination he says that he is unable to say whether or not the revenues of the railroad will be increased by the improvement of the road. His impression is that they would be, but he does not know. If the country served by this road had no way of getting to Alma, they would take their produce to Van Buren; but he could not say whether that would affect the revenues of the road, but thought that it would make a difference, as Van Buren has a competing railroad, the St. Louis & San Francisco Railroad.

Mr. Hamer, who is a farmer, and knows this road, testified that it is now a good road; that he lives right out of town, and is in a position to observe the traffic that comes into town over this road, and that twice as much comes over it now as did before it was improved; prior to the improvement and during the winter season that road was very bad. On cross-examination he says he thinks it helped the traffic of the railroad, but "I don't know anything about the running of a railroad; don't know what effect it would have on the railroad; it helps the people who live down there along the road, but so far as the railroad is concerned, and so far as its reve-

nues are concerned, I do not know as to whether it would affect or help it or not."

That was all the evidence that was introduced on this subject. The maps of the road, showing the territory embraced in the district and location of the road, and the plaintiff's property in relation to the road, were also introduced by plaintiff. Does the evidence show any benefit to the railroad, which justifies the assessment on its property? That the railroad may be assessed for road, bridge, and other improvements, when benefited thereby, may be conceded, and it has been so held by the Supreme Court of Arkansas in several cases. But, if there is no advantage or benefit to its property, it clearly amounts to confiscation.

The only benefit to appellant claimed by appellees is that, if this road had not been built, a great deal of the business, now coming to Alma by reason of the construction of the road, would go to Van Buren, and, there being a competitive road at Van Buren, the St. Louis & San Francisco Railroad, the plaintiff's road would only get a share of the business, while at Alma it gets it all, there being no competitive road there.

Although counsel in their briefs and argument indicate that the court rested its finding on the fact that the finding of benefits by the General Assembly is conclusive, even if the court erred in this declaration of law, if the assessment is warranted by reason of benefits to be derived by the railroad from it, this court would not reverse the cause upon the ground that the court gave a wrong reason for a correct conclusion. Latting v. Owasso Mfg. Co., 148 Fed. 369, 78 C. C. A. 183; Bunday v. Huntington, 224 Fed. 847, 140 C. C. A. 415. To declare the law, that the finding of benefits by the Legislature, without any opportunity to the parties in interest to be heard, is conclusive, would enable a state, under the guise of the taxing power, to confiscate property. It has been well said that the power to tax is the power to destroy. McCulloch v. Maryland, 4 Wheat. 431, 4 L. Ed. 579; Loan Association v. Topeka, 20 Wall. 655, 663, 22 L. Ed. 455. But, assuming that the trial court found that the proof established a benefit to the railroad, is the finding warranted by the evidence?

The finding of a trial judge is entitled to high consideration, and unless clearly against the weight of the evidence, or caused by a misapplication of the law, will not be disturbed on appeal. On the other hand, if the finding is clearly against the weight of the evidence, the appellate court, in a proceeding in equity, will reverse it, as on appeal the facts as well as the law are open for consideration. Alexander v. Redmond, 180 Fed. 92, 103 C. C. A. 446. The evidence hereinbefore set out convinces that the finding that the railroad would be benefited by this road is clearly against the weight of the evidence, if not entirely without any evidence to support it.

On the one hand, witnesses of experience in railroad traffic testified that this new road is of no benefit to the railroad, or any part of it. On the other hand, none of the witnesses introduced by the defendant had any experience whatever in the management of railroads or

their traffic, and they merely expressed the opinion that, if the town of Alma increased its trade, this railroad, being the only one in that town, would be the beneficiary, and its traffic would be correspondingly increased, while without the improved road considerable traffic would be diverted to Van Buren, where there was a competitive railroad. This cannot be said to be convincing testimony in view of the lack of experience of the witnesses introduced by the plaintiff. Judging from Mr. Hamer's testimony, the effect of the construction of the road is to "help the people who live down there along the road."

Counsel rely on what was decided in St. Louis & San Francisco R. R. v. Bridge District, 113 Ark. 493, 495, 168 S. W. 1066. The report of that case fails to show what the evidence was, but the court expressly held that the act of the Legislature did not undertake to determine the amount of the benefits by the act creating that bridge district. Nor did the court pass on the sufficiency of the evidence on the question of benefits. The court held on that point:

"We are of the opinion that the evidence is sufficient to sustain the finding of the Circuit Court as to the extent and value of the benefits. The testimony is conflicting, and consists mainly of the opinions of witnesses who qualified themselves by showing that they had knowledge of the values of property in the district and the estimated benefits to accrue from the construction of the improvement. Anything like an extensive analysis of the testimony would serve no useful purpose."

And it concludes by saying:

"We are not prepared to say that the evidence in this case, as it appears in the record, preponderates in favor of the amount of benefits found by the assessors and by the circuit court; but we are not called upon to pass upon the weight of the evidence. The question of its legal sufficiency is all that we need pass upon, and we are of the opinion that there is competent testimony of a substantial nature sufficient to base the finding upon as to the amount of benefits fixed."

It is to be noted that that case was an action at law, and the findings of facts by the trial judge, sitting as a jury, have much greater weight in the appellate court than in a cause in equity.

It is also claimed by appellees that the plaintiff is estopped by his conduct to question the validity of the act. They say in their brief:

"The railroad stood by, permitted the district to issue its negotiable bonds and to borrow the money with which to do the work, and permitted the work to be done; and then, when the highway was completed, and it was assured of an increased traffic that would result therefrom, it brought this suit to restrain the collection of taxes. * * * Without the tax upon the railroad, a large part of the bonds must go unpaid."

[13] It may be conceded that the principle of estoppel can apply to cases of this nature, but in order to create an estoppel it is necessary that the party sought to be estopped by his conduct induced the other party to act on it to his detriment, or, as said in Bloomfield v. Charter Oak Bank, 121 U. S. 121, 135, 7 Sup. Ct. 865, 872 (30 L. Ed. 923):

"No estoppel in pais can be created, except by conduct, which the person setting up the estoppel has the right to rely upon, and does in fact rely and act upon."

The only testimony on that point is that of Mr. Pryor, who testified:

"I made an investigation of this (that is, prior to the latter part of 1914 or the early part of 1915), I cannot remember how long before this. I remember that Judge Hill represented the contractors, and we discussed the feasibility of building the road under the act creating Crawford County road improvement district. No. 2 of the Acts of 1911. Judge Hill stated to me that he did not believe that the commissioners would be able to get the contractors, whom he represented, to take the contract and look to the bonds to be issued for payment of the cost of the construction of the road; that the commissioners were making an effort to do so, but that he had advised his clients, the contractors, against the proposition. We discussed the matter several times, and he suggested that he would keep me advised as the matter progressed. I had no further information from him, and knew nothing at the time of the contract being let, or of any effort on the part of the commissioners to obtain a contract on any other terms for the building of the road. The next information I had in regard to it was that the bonds had been sold, and that considerable work had been done on the road."

This clearly does not establish an estoppel, especially as to the contractors and purchasers of the bonds, who were not parties to the formation of the district, or the assessment of benefits, nor parties to this action. Deery v. Cray, 5 Wall. 795, 18 L. Ed. 653; Thompson v. Sioux Falls Natl. Bank, 150 U. S. 231, 244, 14 Sup. Ct. 94, 37 L. Ed. 1063. Nor was the plaintiff, or the railroad company, a party to any of the board's proceedings. For more than three years after the enactment of the act nothing was done towards the construction of the road. This action was instituted on March 17, 1916, and while the record fails to show when the assessments were certified by the board to the collector of taxes, it must have been done on January 1, 1916, as the bill only seeks to enjoin that year's taxes, and under the provision of the act the taxes were to be certified by the board on or before January 1st of each year, and become payable between the first Monday in January and the 10th day of April of that year.

It therefore cannot be said that plaintiff did not act promptly. The decree is reversed upon two grounds: (1) That the act imposes a higher rate of taxation on the railroad property of the plaintiff than it does on the other property in the district, by reason of the fact that its franchise and other intangible property are included in its assessment. (2) That the evidence fails to show that the railroad company derives any benefit from the road.

The decree of the lower court is reversed, with directions to make the temporary injunction perpetual.