## WINEINGER v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. October 4, 1921. Rehearing Denied December 19, 1921.)

No. 5540.

1. **Railroads ⊜⊐460(1)—Negligence and contributory negligence held questions for jury on evidence as to injury to soldier guarding bridge.**

Plaintiff's intestate was one of a company of soldiers detailed to guard a bridge on defendant's railroad. The camp was at the east end of the bridge, and guards were maintained at each end and beneath. There was a double track over the bridge; east-bound trains using the south, and west-bound trains the north, track. Plaintiff's intestate was one of the guards at the west end, and in early morning, while it was somewhat hazy, started under orders to cross to the camp over the north track walking on the ties, there being no flooring, and was struck and killed by an east-bound train using that track contrary to custom. There was a curve west of the bridge, and it could not be seen until a train reached the bridge upon which track it was running. Defendant knew of the presence of the soldiers, the location of the camp, and where the guards were stationed. There was evidence that the train gave no signal of its approach. *Held*, that the questions of negligence and contributory negligence were for the jury.

2. **Appeal and error ⊜⊐856(1)—Ruling sustained if correct on any ground.**

The ruling of a trial court may be sustained on a ground different from that on which the court based it.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by Josephine Wineinger, administratrix, against the Union Pacific Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

William S. Hogsett and Murat Boyle, both of Kansas City, Mo., for plaintiff in error.

N. H. Loomis, Edson Rich, Charles A. Magaw, and Thomas W. Bockes, all of Omaha, Neb., for defendant in error.

Before CARLAND and STONE, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. [1] Action for the death of Leo A. Duke caused by the alleged negligence of the railroad company. A verdict was directed in favor of the company, and the administratrix of the estate of Duke assigns this ruling as error. The plaintiff at the trial introduced evidence showing and tending to show the following facts: Duke at the time of his death on April 9, 1917, was a private soldier in Company D, Fourth Nebraska Infantry. Prior to the above date the United States had declared war against the Imperial Government of Germany and had called the Fourth Nebraska Infantry into the military service of the United States. Through correspondence between the War Department and the railroad company, the latter was requested by the former to designate the points and bridges on the line of its railroad which ought to be guarded. The railroad company, pursuant

---

⊜⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to said request, designated the railroad bridge located about one-half mile east of Waterloo, Neb. Whereupon Company D aforesaid was assigned to guard said bridge, and Duke as a member of said company on the date mentioned was on duty aiding in the performance of the duty with which said company had been charged. The railroad company knew on the date above mentioned that there were soldiers stationed at and guarding the bridge in question and the places on the bridge where they were stationed. The bridge was about 600 feet long. The railroad company operated over the bridge a double-track railroad extending in a general east and west direction, east-bound trains traveling on the south track, and west-bound trains on the north track. The camp of the soldiers was at the east end of the bridge. At night there were two men at each end of the bridge and two underneath the center doing guard duty. It was necessary for the men stationed at the west end of the bridge to cross the bridge in going on or off duty.

On the morning of the day above mentioned, Duke and one Murphy were on duty guarding the west end of the bridge, having gone on duty at 12 midnight, and would go off duty at 6 o'clock a. m. About 5 o'clock a. m. Duke was given permission by his superior officer to cross the bridge to the east end to get a drink of water. It was necessary for him to cross the bridge to obtain the water. Duke started to cross the bridge on the north or left-hand track. In crossing the bridge he was obliged to walk on the ties between the rails. There was no place to walk between the two tracks as the ties under each track did not meet. The ties extended from one to one and one-half feet outside the rail. The only way to get from one track to the other was to step across the space between the ties, which was about three feet. Soon after Duke started to cross the bridge, a fast freight train consisting of 50 or 60 cars approached the bridge from the west, east bound on the north or left-hand track. Trains usually approached and crossed the bridge at from 35 to 40 miles per hour, the exact speed of the train in question not being shown. All of the witnesses testified that they did not hear any whistle sounded or bell rung as the train approached the bridge. One witness testified that the train whistled in the town of Waterloo. It is conceded that this train struck Duke and killed him. Shortly after the train passed, deceased was found underneath the north track about 75 yards west of the east end of the bridge. Duke was struck by the train from the rear, thrown against the girder at the north side of the bridge, and from there his body fell to the ground beneath. At the time of the accident day was just breaking, and while the atmosphere was "kind of hazy" or foggy from the river, one could see "clear across the bridge." The double tracks as they left the west end of the bridge curved to the north, the curve being from 100 to 200 yards west of the west end of the bridge. By reason of the fact that east-bound trains had been accustomed to run on the south track and west-bound trains on the north track, the soldiers had been directed to walk on the north track when going east and the south track when going west.

The witness Perry testified that the tracks seem to run together at the curve just west of the bridge and that he could not tell at first which track the train was running on. This witness started to cross the bridge

some distance behind deceased. He was first able to tell that the train was on the north track when it got to the end of the bridge and within 30 or 40 feet of him, at which time he crossed to the other track. The only means of getting to a place of safety when a train came along on a track on which a person was walking was to either drop down to the sand bar beneath, or if he were near one of the cross braces he could stand on it, or he could step across the open space between the ends of the ties to the other track. On account of the curve west of the bridge and the height of the steel girders on the side of the bridge, it was not possible for a person on the bridge to see a train approaching from the west until the train was almost on the bridge. The railroad company introduced no evidence. One of the grounds of negligence alleged in the petition was that the defendant carelessly and negligently ran down Duke without giving any signal of the approach of its train to or on the bridge. Witnesses who testified that they did not hear a whistle sounded or a bell rung were in positions to hear the whistle and bell if they had been sounded or rung. Conceding that the whistle was sounded in Waterloo as testified by the witness Perry, we think the case was clearly one for the jury as to whether any signal of the approach of the train to or onto the bridge was given. Certainly the sounding of the whistle in the village of Waterloo could not be said, owing to the distance between the village and the bridge, to be a signal for the bridge. Whatever the exact status of Duke was in relation to the railroad company, it is clear beyond question that he was lawfully upon the track upon which he was killed and that the railroad company owed him the duty to use ordinary care not to injure him; such care being measured by the circumstances and conditions surrounding the railroad company and Duke at the time in question. The railroad company knew that the soldiers were there. It knew where the camp was located and where the guards were posted. It knew that the bridge could not be crossed except by walking on the ties between the rails of the different tracks. In view of the double track, the roar of the train cannot be relied upon, standing alone, as notice that the train was approaching on the track upon which deceased was walking.

[2] The trial court directed a verdict on the ground that the evidence did not show any negligence on the part of the railroad company. Counsel for the company now urge that if for any reason the ground upon which the ruling of the trial court was based was erroneous, still the ruling of the court was right because Duke was guilty of contributory negligence. Under the decisions of this court the company has the right to make this contention. U. S. v. Porter Fuel Co., 247 Fed. 769, 159 C. C. A. 627; Ramsey v. Crevlin, 254 Fed. 813, 166 C. C. A. 259; Latting v. Owasso Mfg. Co., 148 Fed. 369, 78 C. C. A. 183; Modern Woodmen of America v. Union Nat. Bank of Omaha, 108 Fed. 753, 47 C. C. A. 667.

It is claimed that if Duke had looked and listened he would have known that the train was approaching him on the north track. There being no evidence as to what he actually did, we must presume that he used ordinary care or looked and listened, and if the physical facts were such as to show conclusively that by so doing he could have ascertained

that the train was approaching him on the north track, then he was guilty of contributory negligence in remaining on the track. The roar of a train, however, would not tell him which track the train was on, and in view of the fact that it was customary for east-bound trains to run on the south track, together with the haze and fog, we cannot say that he could or must have seen that the train was on the north track. It is not enough that he might have seen the train but that he might have seen that it was approaching him on said north track. It is true that the running of the train against traffic was not an act of negligence on the part of the company, but in determining whether Duke was guilty of contributory negligence the fact that the train was running against traffic becomes material. We are of the opinion that the evidence appearing in the record would not authorize a court to say as matter of law that the railroad company was not negligent or that Duke was guilty of contributory negligence. The law governing the situation of the parties is so well settled as to require no citation of authorities and so far as the facts are concerned each case must be judged by its own facts.

Judgment reversed, and a new trial ordered.