## GOLD v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
May 7, 1928.

No. 229.

**1. Witnesses** ⚖➡268(3)—**Witness, having answered in negative question respecting certain conversation, permitting government to bring out remainder on cross-examination resulting in proving fact by hearsay testimony, held reversible error (Anti-Narcotic Act, § 2 [26 USCA § 696]).**

Where, on trial for sale of morphine in violation of Anti-Narcotic Act, § 2 (26 USCA § 696; Comp. St. § 6287h), after police officer testified he had seen automobile bearing defendant's license numbers in front of premises at which arrest was made, he answered in negative question whether he had not told government's attorney that only automobile number he had obtained was number of taxicab, *held* that, there being no contradiction or impeachment of officer's previous testimony, permitting government to bring out on cross-examination the remainder of statements by officer to government's attorney to prove by hearsay that taxicab driver had seen automobile bearing defendant's number was reversible error; rule that, when part of conversation is drawn out in evidence, opposing party may put in other parts of same conversation not being applicable.

**2. Criminal law** ⚖➡1165(1)—**The greater the doubt of guilt, the more likely that prejudice results from trial errors.**

The greater the doubt of defendant's guilt, the more likely that prejudice results from errors in the trial.

In Error to the District Court of the United States for the Eastern District of New York.

Samuel Gold was convicted under an indictment charging conspiracy to violate and substantive violations of the Anti-Narcotic Act of December 17, 1914 (38 Stat. 785), as amended (26 USCA §§ 211, 691–707; Comp. St. §§ 6287g–6287q), and he brings error. Reversed, and remanded for new trial.

Blau, Perlman & Polakoff, of New York City (Ben Herzberg, of New York City, of counsel), for plaintiff in error.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The conviction was upon four out of six counts charged in the indictment, and sentences were imposed to run concurrently. Just prior to the argument before us, the Supreme Court handed down its opinion in Nigro v. United States, 48 S. Ct. 388, 72 L. Ed. ——, decided April

9, 1928, as a result of which the United States attorney has confessed error as to three of said counts, and now stands only upon the third.

This count charges violation of section 2 of the act (26 USCA § 696; Comp. St. § 6287h), by the sale on November 9, 1926, of a quantity of morphine without using the prescribed order form issued by the Commissioner of Internal Revenue. There was no dispute that a sale of morphine was made to the informer, Messine, just before the arrest of Gold and the two men, Sadina and Gomez, charged to be his accomplices. The dispute was whether Gold participated in that sale.

The case of the prosecution depended entirely upon the testimony of the informer and of the two accomplices, who pleaded guilty the day before the case came on for trial. Their story was that Messine importuned Gomez to sell him narcotics; that Gomez finally consented and brought Messine into contact with Sadina; that after these two had agreed upon a price the three went to 21 Atlantic avenue, Brooklyn, where Gold later joined them, bringing the narcotics. When the officers rushed in to make the arrest, Sadina was the one who sought to conceal the morphine by throwing it out of the window. He also was the one on whom was found the marked money paid by Messine as part of the purchase price.

Gold's defense was a denial that he had anything to do with the narcotics. He kept a restaurant on Grand street, New York. He explained his presence in 21 Atlantic avenue by the story that he had sold whisky to Sadina and had come to collect payment. This story he told to the officers, and it received corroboration by the arrival within half an hour of Potal with two cases of whisky. Potal, the delivery man, testified that he had received the whisky from one Goldstein, together with a paper giving the name and address of Sadina as the person to whom delivery was to be made and the name of Gold as the sender. Gold testified that he had been driven to Atlantic avenue by Galtrof in the latter's car, and that he had carried no parcel. Both of these statements were substantiated by the testimony of Galtrof. On cross-examination Gold expressly denied that he had been driven to Brooklyn in his own Buick car.

To show that Gold did not come in Galtrof's car would go far to break down his denial of bringing the box of narcotics. It is true that the whisky story would still remain, but the effect of proving that he did not come with Galtrof would eliminate the latter's

testimony that he carried no parcel, and would be a serious blow to his defense. Therefore any testimony which showed that Gold's own car was waiting outside—from which the jury might infer that he had come, in it, instead of in Galtrof's—was of grave importance. This the government sought to show in rebuttal. It recalled Police Officer Higgins, one of the officers who made the arrest. He testified that he found in Gold's pocket an automobile registration card; that later in the evening he saw in front of 21 Atlantic avenue· an automobile having a license plate bearing the same number as that shown on Gold's registration card; and that as he approached the car it ran away from him.

[1] This brings us to the evidence, the admission of which is strenuously urged to have been error. Counsel for Gold asked Higgins whether he had not told Chiert (an assistant United States attorney who had taken part in preparing the case for trial) that the only automobile number he had gotten was the number of a taxicab. His answer was: "I did not." Thereupon Mr. Herz, attorney for the prosecution, asked him: "What did you tell Chiert?" And, over objection, Higgins was allowed to testify as follows:

"A. (continued). I told Mr. Chiert that a taxicab that was standing in front of 21 Atlantic avenue, or two or three doors away, raised my suspicion, after I was in the flat two or three minutes, and then I brought him out to the door, and the taxicab driver called me over—

"Mr. Price: Oh, I object.

"The Court: Objection overruled.

"Mr. Price: Exception.

"The Court: That is in this same conversation?

"The Witness: Yes, sir. He took me over to the car, and said there was a Buick car drove up here, and I scratched the numbers on my dashboard, and he said go there and get them; it may be useful to you. I afterwards went up stairs and verified it, according to the registration card that Mr. Gold had in his pocket. I afterwards went down to get the taxicab driver, and when I went down he was gone."

He then testified that half an hour after this conversation with the taxicab driver he saw the automobile bearing Gold's license number pass by 21 Atlantic avenue.

Higgins' repetition of what the taxi driver had told him was clearly hearsay. The excuse offered is that Gold's counsel had "opened the door" to Higgins' conversation with Chiert. The result was to allow Higgins' testimony to become the basis for proving by hearsay that the taxi man had seen a Buick car bearing a number which he reported to Higgins, and which Higgins verified as Gold's number. The principle that, where one party introduces part of a conversation, the opposing party is entitled to put in other parts of the same conversation, cannot be stretched to any such extent as this. See Greer v. State, 6 Baxt. (Tenn.) 629; Mott v. Detroit, etc., Ry., 120 Mich. 127, 79 N. W. 3; People v. Flaherty, 162 N. Y. 532, 57 N. E. 73; State v. McDonough, 232 Mo. 219, 134 S. W. 545. In fact, no part of Higgins' conversation with Chiert had been put in. Higgins had answered "No" to counsel's question. Thus there was no contradiction, no impeachment, of his previous testimony; the jury had learned nothing of what Higgins had told Chiert.

[2] The doctrine of completing proof has no application. We regard the prosecuting attorney's effort to bring in the story of what the taxi driver said to Higgins as highly improper. He must have known what Higgins would say, and he must have realized that it was incompetent, or he would have attempted to bring it out on the direct examination of Higgins. Bringing it out on cross-examination trapped the court into admitting incompetent testimony, which he would at once have recognized as incompetent, had the question been asked on direct. We cannot sanction such practice; nor can we, on the facts of this case, feel confident that the error had no effect upon the jury's verdict. As stated in People v. Caruso, 246 N. Y. 437, 159 N. E. 390, the greater the doubt of guilt, the more likely that prejudice results from errors in the trial. See Fliashnick v. United States, 223 F. 736 (C. C. A. 2). The government's case was not so clear that the error can be deemed unsubstantial.

The judgment is reversed, and the cause remanded for a new trial.