## CALDWELL v. UNITED STATES.

Circuit Court of Appeals, Tenth Circuit.
October 16, 1929.

Rehearing Denied December 9, 1929.

Nos. 83, 84.

ant had been an officer of the Caldwell State Bank, which on June 21, 1923, was merged with the National Bank of Commerce of Shawnee. A new bank, the National Bank of Commerce in Shawnee, was chartered September 25, 1923, and the business was carried on thereafter under the new name. In the second of these cases, he was convicted on four counts of the offenses of making false entries in the books of his bank, the entries consisting of a charge on the journal of the bank in the sum of $120,000 to the First National Bank at Oklahoma City, and of a similar charge in the ledger of the bank, and a corresponding entry on the journal, crediting his own bank with such sum, and a like credit in the ledger. These four counts allege the offenses to have been committed on September 25, 1923. The court imposed a sentence of five years on each of the five counts involved, the sentences to run concurrently. All the offenses grew out of one transaction, to wit, the showing of $120,000 more cash than the bank actually had. If there is no merit in the errors assigned in one of the cases, no prejudice can accrue to the defendant on account of errors, if any, in the other.,

We will consider case No. 84, which was the first case tried. At the threshold of the case we are confronted with the fact that there is no bill of exceptions in either case. Instead, there is a verbatim report of the entire trial, consisting of 181 pages in one case and 352 pages in the other. In case No. 84, the defendant was tried upon 19 counts not involved in this appeal, and there was a codefendant tried, who was acquitted. In the brief of appellant it is stated: "There is very little testimony in these 350 pages that has any bearing upon this appeal, because it was directed to a large number of other counts, and also against a codefendant who was found not guilty."

In 1911 Congress passed an act authorizing the Supreme Court and the Circuit Courts of Appeals to prescribe by rule the making up of the printed transcript (title 28, § 865). In 1912 the Supreme Court enacted its rule 8, which provides:

"2. Only so much of the evidence shall be embraced in a bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved, and such evidence as is embraced therein shall be set forth in condensed and narrative form, save as a proper understanding of the questions presented may require that parts of it be set forth otherwise."

F. H. Reily and Mark Goode, both of Shawnee, Okl. (Charles E. Dierker and John L. Goode, both of Shawnee, Okl., on the brief), for appellant.

Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl. (Fred A. Wagoner, Asst. U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. In the first of these cases, the defendant was convicted of making a false report to the Comptroller of the Currency of the condition of a bank, of which he was cashier. The defend-

This statute and rule applies "in every kind of action or suit, where review is sought in a Circuit Court of Appeals." Barber Asphalt Co. v. Standard Co., 275 U. S. 372, 48 S. Ct. 183, 187, 72 L. Ed. 318. The rules of the Eighth Circuit provided that "the practice shall be the same as in the Supreme Court of the United States, as far as the same shall be applicable."

In 1918 the Second Circuit held that a verbatim copy of the proceedings at the trial was not a bill of exceptions. Linn v. United States (C. C. A.) 251 F. 476. And in 1925 the Eighth Circuit, in a criminal case, again called the attention of the bar to this fact. Marr v. United States (C. C. A.) 8 F.(2d) 231. The same was held in Stunz v. United States, 27 F.(2d) 575 (8 C. C. A.). See, also, Beck v. United States, 33 F.(2d) 107 (8 C. C. A.). The second paragraph of rule 10 of this court is a copy of rule 8 of the Supreme Court.

On the oral argument of the case at bar this situation developed, and counsel asked and was given leave to print and file a narrative statement of the evidence in accordance with the rule, which in a law action can only be done by stipulation of the parties. In this respect it is unlike Barber Asphalt Co. v. Standard Co., supra, which was an equity case. Counsel for the appellant summarized the 352 pages of evidence in 8 printed pages. He failed, however, to secure the approval of the district attorney to the condensation. Our review of some of the errors assigned will therefore be circumscribed.

First. Upon the coming in of the verdict, on February 25, 1926, the cause was continued for sentence to February 27, 1926. On that date the defendant filed a motion for new trial. On October 8, 1927, the cause was again continued for sentence to the next term of the court. On May 24, 1928, the motion for new trial and the sentence were assigned for hearing on May 26, 1928. On that date, the motion for new trial was overruled, a motion in arrest of judgment was heard and overruled, and the defendant was sentenced. The record does not show any effort on the part of the defendant to secure an earlier disposition of the motion for new trial. It appears that five terms of court are held each year in the Western district of Oklahoma, in five different cities. It is argued that the court lost jurisdiction to impose the sentence, by a postponement thereof for more than two years, during which time there were at least ten terms of court in the district. The principal reliance of counsel is the case of

Mintie v. Biddle, 15 F.(2d) 931 (8 C. C. A.), and cases therein cited. In the Mintie Case it appears that Mintie was jointly indicted with one Levy, and Mintie plead guilty. Levy was a fugitive from justice, and the government did not desire to have Mintie sentenced until Levy was apprehended. The plea of guilty was accepted, and the case continued indefinitely, and no order was made for 34 months, after which he was sentenced. The court held that the postponement was without good reason, and that the sentence was unlawfully imposed. The opinion quotes with approval from United States v. Wilson (C. C.) 46 F. 748, 749, in which the rule is stated:

"There can be no doubt of the right of a court to temporarily suspend its judgment, and continue to do so from time to time in a criminal cause, for the purpose of hearing and determining motions and other proceedings which may occur after verdict, and which may properly be considered before judgment, or for other good cause."

The opinion further quotes with approval from Ex parte Singer (C. C. A.) 284 F. 60, 63, wherein it is stated:

"So it is clear from the authorities that a court may, by appropriate action, retain jurisdiction of a criminal cause, for a lawful purpose, beyond the term of the conviction and may impose sentence at a later term. But when a court declines to take action at the term of the conviction, it thereby inevitably postpones sentence, and when (in the absence of statute or accepted practice) a court postpones sentence silently, that is, without an indication of a lawful purpose, it in effect postpones sentence indefinitely. The weight of authority is that when a court has, without a valid reason and quite indefinitely, postponed the pronouncement of sentence, it cannot at a subsequent term proceed to judgment by imposing sentence."

We are of the opinion that a postponement of a sentence for the purpose of hearing and deciding a motion for new trial is a valid reason within the decision of the Mintie Case. We are not here called upon to deal with a situation where the defendant has unsuccessfully endeavored to get his motion for new trial heard. There is no suggestion in the record, or on the argument on appeal, that the defendant or his counsel any time requested or suggested that his motion for a new trial should be called up for disposition. We conclude there is no merit in this assignment. Ormsby v. United States, 273 F. 977 (6 C. C. A.); Ex parte Dellan (C. C. A.) 26

F.(2d) 243; King v. United States (C. C. A.) 25 F.(2d) 242.

■ Second. It is contended that the evidence is not sufficient to sustain the conviction. Counsel contend that the defendant neither made nor directed the making of the entries complained of, but simply acquiesced in a direction to that effect given by his co-defendant Russell S. Caldwell. There was no motion for a directed verdict at the close of the evidence in the case, and the point is not, therefore, before us. Clements v. United States, 297 F. 206 (9 C. C. A.), certiorari denied 266 U. S. 605, 45 S. Ct. 92, 69 L. Ed. 464; Anderson v. United States, 264 F. 75 (8 C. C. A.), certiorari denied 253 U. S. 495, 40 S. Ct. 587, 64 L. Ed. 1030.

However, counsel for appellant in his brief quotes the following excerpt from the testimony of the bookkeeper, who actually made the entries: "Jess Caldwell said that the statement of the bank did not include as much as $120,000 in cash; that he wanted to publish a statement of the new bank, and wanted to show a good statement of condition, and we would make some entries charging the First National Bank of Oklahoma City and crediting this special account the National Bank of Commerce." The record therefore refutes the claim.

■ It is further claimed that, even if the defendant did direct the making of the entries, the evidence is undisputed that his purpose was not to deceive the officers of the Federal Reserve Bank, or the Comptroller of the Currency and his agents and examiners, but was done for advertising purposes. If this argument is tenable, any banker may falsify his books at will, and then present a complete defense by a simple declaration that his intent was to deceive the public, and not to deceive the Comptroller of the Currency. There is no merit in this assignment.

Third. Error is predicated upon the admission of certain evidence. A part of the evidence complained of is the testimony of a national bank examiner, who testified as to conversations had with the defendant just prior and leading up to the merger of the two banks. This evidence tended to give the jury the setting. In the appellant's brief, filed in this court, it is stated:

"This, then, brings us squarely to a consideration of the evidence; but before we can intelligently consider the same, as it relates to the particular offenses herein considered, or the assignments of error, or the points sought to be raised, it is essential to have in mind some knowledge of the general condition of the affairs of the bank itself, its predecessor, and the facts surrounding the transaction at the time it was charged the offense was committed."

While the error assigned is not open to review for the reasons to be shortly given, it would appear that, if it is necessary for this court to have some knowledge of the antecedent transactions before it can understand the record, like evidence would be helpful to a jury. The second bit of evidence complained of concerns itself with the evidence of one L. K. Roberts, a national bank examiner, in rebuttal. This testimony dealt with a conversation with Russell S. Caldwell, who was acquitted, and no question concerning its admission is of any interest on this appeal.

■ But these alleged errors are not open for our consideration. Not only is there no bill of exceptions, as noted above, but the assignments of error are not in accord with rule 11 of this court. Counsel undertakes to avoid this by invoking the rule that radical errors, which appear to have seriously prejudiced the rights of the defendant, may be noticed in the absence of proper assignment of error. McNutt v. United States, 267 F. 670 (8 C. C. A.); Wiborg v. United States, 163 U. S. 632, 16 S. Ct. 1197, 41 L. Ed. 289. It is quite clear that the errors complained of here do not fall in that category. It must be understood that the rule referred to cannot be invoked generally as a substitute for proper assignments of error.

■ Fourth. The record discloses that the jury asked for and was given the exhibits in the case, and that among the exhibits were certain records and books of account, which contained a great many entries that had not been admitted in evidence. As soon as this was discovered, the exhibits were recalled from the jury room, and the jury recalled and instructed that it must not give any consideration to any of the exhibits, excepting those which had been properly introduced in evidence. Thereupon the foreman of the jury stated:

"Foreman of the Jury: We only examined or paid attention to those that had anything to do with the question under consideration. The others were not looked at at all.

"By the Court: Is there any further desire on the part of the jury to examine any exhibits in the case?

"By the Foreman: I think we are through with them.

"By the Court: Well, that will be suffi-

cient. You will be very careful to make certain that no other exhibits have any attention or any regard paid to them, except those directly affecting the last four counts of the indictment. You may retire for further deliberation."

█ The statement of the foreman is not controverted, and there is nothing in the record to indicate that the jury saw, or read, or considered anything that was not properly before it. The cases cited by counsel, which hold that it is error for a jury to consider documents that are not in evidence, are therefore not applicable. Care should be exercised that exhibits which are identified, but not offered in evidence, are not taken into the jury room, and that, where only a portion of a book or paper is admitted in evidence, the jury is not permitted to consider that part not offered in evidence. Necessarily considerable latitude must be vested in the trial court in all such matters as this, and in our opinion the record discloses no prejudicial error in this respect.

█ Fifth. The trial court's charge to the jury was a full and fair statement of the law governing the case. At the close of the charge the court asked counsel if there were exceptions to be taken thereto. Certain requests and exceptions were taken, but the principal errors now complained of were not called to the attention of the trial court at the close of his charge. These objections are, therefore, not before us for consideration.

█ Sixth. Complaint is also made of a supplemental charge to the jury, made at a time when the jury appeared to be in disagreement. In a commendable effort to avoid a mistrial, the trial court kept well within the law of Allis v. United States, 155 U. S. 117, 15 S. Ct. 36, 39 L. Ed. 91, approving a supplemental charge given in the court below, which may be found in United States v. Allis (C. C.) 73 F. 165, at page 182.

Some other matters have been presented and have been considered. We are of the opinion that the defendant was given a fair trial, and that the judgment of conviction and sentence should be affirmed.

█ It is unnecessary to consider in detail case No. 83. The offenses there charged were a part of the same general plan to disclose a fictitious asset of $120,000, the sentence was concurrent with the sentence in case No. 84, and the defendant cannot be prejudiced by error, if any, on that trial.

The judgments and sentences are affirmed.