**METZLER et al. v. UNITED STATES.***

**No. 6829.**

Circuit Court of Appeals, Ninth Circuit.

March 27, 1933.

*Rehearing denied May 15, 1933.

R. B. McMillan, of San Francisco, Cal., and E. S. Mitchell, of Eureka, Cal., for appellant Metzler.

Blaine McGowan, of Eureka, Cal., for appellant Lennon.

Geo. J. Hatfield, U. S. Atty., of San Francisco, Cal., Albert E. Sheets, Asst. U. S. Atty., of Sacramento, Cal., and Chellis M. Carpenter, Asst. U. S. Atty., of San Francisco, Cal., for the United States.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

S. E. Metzler and J. J. Lennon, together with ten other named defendants, were indicted on December 30, 1930, for conspiracy to commit unlawful acts of manufacturing, transporting, possessing, and selling alcohol, whisky, wine, and beer in Humboldt county,

Cal. At the times mentioned in the indictment S. E. Metzler was the district attorney of Humboldt county and J. J. Lennon was county detective, having been appointed by Metzler shortly after he assumed the office of district attorney. Two defendants, Roy Wherry and L. B. Updike, pleaded guilty at the time of trial and eight others were acquitted. Defendants Metzler and Lennon, having been found guilty by the jury, bring this appeal.

We quote from the government's brief the circumstances tending to show guilt which are substantiated by the evidence:

"In the summer and fall of 1926 there was a campaign and election for county attorney.

"Appellant Metzler, with the aid of some of the defendants, some of whom were known bootleggers, was elected to that office.

"There is evidence which shows that in 1926 the district attorney-elect, prior to taking office, decided to eliminate the prohibition squad, and after taking office hired, with others, as county detectives, those defendants who were known bootleggers and who, after accepting said employment, continued in more or less degree to ply their trade. Appellant Lennon was one of them.

"There is evidence that appellant Metzler and some of his political associates who were named as defendants in this case, including appellant Lennon, were trying to obtain money, and did obtain money, from persons who were in the liquor business and from others who contemplated entering the business in exchange for protection against honest prosecution; that part of the understanding was that if the general public began to complain so often as to make inaction on the part of the district attorney noticeable, the bootlegger would be required to submit to a friendly form of prosecution, pay the fine or, if it was a jail sentence, to be permitted to substitute another person in lieu of the bootlegger to serve the same.

"That the county attorney elected as head of the enforcement department of the county government and appellant Lennon as his chief aid were not vigilant in any part of said county in the prosecution of liquor violations.

"That violations of the state prohibitory laws by certain persons well known to the police and the sheriff's office to be consistent liquor sellers with records were open, notorious and continuous for months.

"That large quantities of liquor which

had been seized were converted to the use of appellants and their associates and consequently not destroyed as required by law.

"That appellant Lennon as chief aid to the county attorney-elect and other associates of both were actually engaged in the distribution of intoxicating liquor and in sales at prices above the market. .

"That when prosecution was instituted persons other than the real offenders were brought into court.

"That liquors purchased from persons connected with the scheme were sold by those paying protection, with full knowledge of the district attorney and his county detectives so long as they made their payments for protection. '

"That failure to pay for protection was a signal for raids and prosecutions."

From this chain of circumstances the government contends that the inference that there was a tacit agreement between appellants and others to violate and aid and assist others in violation of the National Prohibition Act is inescapable.

■ One of the main contentions of appellants is that even though the evidence shows the commission of unlawful acts by individual defendants, there is no showing that there was a common motive necessary to prove a conspiracy. A conspiracy may be shown by circumstantial evidence from which common design is the logical inference. Coates v. U. S. (C. C. A.) 59' F.(2d) 173; Burkhardt v. U. S. (C. C. A.) 13 F.(2d) 841.

The court denied appellants' pleas in abatement and motions to quash the indictment.

■ It appears from the record that one Ben A. Purrington was appointed assistant United States attorney mainly for the purpose of attending the sessions of the grand jury and reporting the testimony of the witnesses in the proceedings culminating in this indictment. The appellants contend that the presence of Purrington in the grand jury room was unauthorized and invalidated the indictment. There seems to be some conflict in the authorities, but the clear weight of authority is to the effect that the presence of an assistant United States attorney in the grand jury room, even though appointed for the sole purpose of reporting the testimony given there, does not invalidate the indictment. Hale v. U. S. (C. C. A. 8) 25 F.(2d) 430; Wilkes v. U. S. (C. C. A. 6) 291 F. 988; Wilson v. U. S. (C. C. A. 2) 229 F. 344; May v. U. S. (C. C. A. 8) 236 F. 495; U. S.

v. Amazon Industrial Chemical Corp. (D. C.) 55 F.(2d) 254. The pleas in abatement and motion to quash the indictment interposed by the appellants were properly overruled.

■ Purrington, while testifying at the trial, was permitted, over appellants' objection, to read in evidence from his shorthand notes taken at the grand jury proceedings the confessions made by defendants Kline and Carroll. Appellants claim that this ruling was erroneous because it permitted a violation of the secrecy of the grand jury proceedings. After the indictment has been found and made public and the defendants apprehended, the policy of the law does not require the same secrecy as before. Atwell v. U. S. (C. C. A. 4), 162 F. 97, 100, 17 L. R. A. (N. S.) 1049, 15 Ann. Cas. 253; U. S. v. Amazon Industrial Chem. Corp., supra. Where the ends of justice can be furthered thereby and when the reasons for secrecy no longer exist, the policy of the law requires that the veil of secrecy be raised.

■ Counsel for appellants requested that they be permitted to inspect a transcript of the whole of the testimony given before the grand jury, which transcript was then in the hands of the United States attorney. The denial of this request is also assigned as error. The shorthand notes, from which some of the testimony so taken was read by the witness, were offered in evidence, and for convenience a transcript of the specific notes read was made and substituted with the consent of the court and counsel for the shorthand notes. The transcript of the whole of the grand jury proceeding in the hands of the prosecuting attorney was a confidential matter to which the defendants had no right. The trial court, when requested so to do, instructed the jury that the testimony thus read by the witness was limited to the defendants Kline and Carroll and should be disregarded as far as the other defendants were concerned. The appellants were not prejudiced thereby.

■ There is evidence to the effect that Metzler stated he had received a $100 bribe to "let Stone down easy" on a bootlegging charge and that he told the sheriff that he "could get some, too," thus inviting him to join the conspiracy. As tending to show that Stone was "let down easy," a certified copy of the docket entries in the Humboldt county justice's court in the case of People v. Stone, No. 7032, and the register of actions of the superior court for said county in the case of People v. Stone, No. 12596, were offered by

the government. This evidence was objected to as immaterial upon the ground that there is nothing to connect up any of the other defendants therewith and that, if any conspiracy existed at all in this connection, it was a conspiracy between Stone and Metzler. There is also evidence that the defendants Metzler and Lennon shared in the bribes given to avoid or ameliorate prosecutions for liquor violations. It is not necessary that everything that is claimed to have been done in furtherance of the general scheme of the conspiracy should be done by all of the co-conspirators in order to be admissible in evidence. The ruling of the court was correct. For the same reason evidence of an ineffective prosecution by appellant Metzler of L. B. Updike for a violation of the liquor laws, and the dismissal thereof on his motion therefor, was admissible. The indictment and search warrant in that case were admissible for the purpose of showing the fact of such prosecution and termination thereof.

■■■■■ The testimony given by the witness French is to the effect that in the summer months of 1925 or 1926 French was employed by appellant Lennon to operate a still with and for him on Lennon's property known as Flannigan ranch and that between 800 and 1,000 gallons of liquor were distilled, which were taken away from time to time from that ranch, mostly at night, by Lennon. This evidence was objected to on the ground that the matters testified to took place before January 3, 1927, the date from and after which the conspiracy is charged in the indictment. The court should allow a wide latitude in the proof of a conspiracy charge. Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278. The tendency of this evidence was to show a large and illegal business in which French and Lennon and probably other conspirators were engaged. The evidence showed that Lennon continued to use the Flannigan ranch in connection with his bootlegging activities after he was appointed county detective by appellant Metzler, taking liquor there that was stolen by him from supplies confiscated by him and Metzler, and selling it from that base. The evidence, therefore, tended to show a continuing conspiracy by Lennon and others, originating as early as 1925 or 1926, into which the other defendants were later drawn. The court was evidently in doubt as to whether the connection between the earlier and later conspiracy of Lennon was shown with sufficient definiteness and, in consequence, limited the evidence to the defendant Lennon and

later on out of an abundance of precaution ordered this testimony stricken from the record and admonished the jury to disregard it, even as to Lennon. There was no error in the admission of this testimony of the witness French.

■■■■■ The testimony given by the witness Smith, to which appellants objected, is to the effect that while defendants Lennon, Goderre, and Kelsey were in the back room of an office in which Smith was waiting, he overheard Goderre say, "Now Jack, this fixes that place up for three months," and he heard Lennon reply, "Yes, that's right"; that Wherry was with Smith when Goderre came into the office but had departed prior to this conversation; that when Smith saw Wherry again he called Wherry's attention to this conversation and Wherry stated that Goderre was trying to be the pay-off man for the district attorney's office. This evidence, tending to show the actions of the conspirators with respect to protection, was admissible, being declarations of coconspirators. However, the court struck out the testimony and admonished the jury to disregard it.

■■■■■ Several witnesses, including the witness Shields, testified, over appellants' objections, that the appellants and others drank intoxicating liquors on many occasions in the office of District Attorney Metzler, which intoxicating liquor had been seized by officers of the county. Evidence of this misappropriation of intoxicating liquor by defendants is admissible as evidence of a conspiracy to unlawfully possess intoxicating liquors as charged in the indictment, and the court correctly instructed the jury in regard thereto.

■■■■■ The witness Shields also testified that he saw Lennon on the streets of Eureka in an intoxicated condition and that he saw Lennon, on numerous occasions while intoxicated, driving an automobile owned by the county. This evidence, upon motion of defendants, was also stricken from the record and the jury told to disregard it. Even assuming that it was error for the court to admit the testimony of the witnesses French, Smith, and Shields, the error was cured by the court's action in striking it from the record and instructing the jury to disregard it. Appellants contend, however, that this action of the court was not sufficient to cure the prejudice already created in the minds of the jury by the admission in the first instance of the testimony of the witnesses French, Smith, and Shields. The general

rule is that, if evidence is erroneously admitted during the trial, the error of its admission is cured by its subsequent withdrawal before the close of the trial or by an instruction to the jury to disregard it. But appellants contend that this case falls within the exception to this general rule that where the incompetent evidence is of such a character as to prejudice the jury, and the record otherwise produces doubt as to the guilt of the appellants, the error in the admission of the incompetent evidence is not cured. Quigley v. U. S. (C. C. A.) 19 F.(2d) 756, 759; Gold v. U. S. (C. C. A.) 26 F.(2d) 185; Wilson v. U. S (C. C. A.) 59 F.(2d) 1; Heitman v. U. S. (C. C. A.) 5 F.(2d) 887. Leaving this evidence out of account, the verdict of the jury was plainly a reasonable one based on the other evidence in the case, and appellants' case does not fall within the exception to the general rule.

 The witness Strong, who was a clerk or stenographer for the district atttorney, was called by the government and testified to a conversation between Metzler and Sheriff Runner which he heard by means of a dictaphone connection in Metzler's office. It is claimed that this was a privileged communication under section 1881, subd. 2, of the California Code of Civil Procedure, which provides as follows: "2. Attorney and client. * * * nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity."

It is too clear for argument that the rule of privileged communications sought to be invoked here has no application. The conversation here involved had nothing to do with the relationship of attorney and client and is not such a communication as is contemplated by the above section. Appellants likewise sought to exclude as a privileged communication the letter written by Costello, a private detective sometimes employed by the district attorney's office, to Metzler, wherein he informed Metzler that he was advised that Lennon was accepting money from bootleggers for protection from the district attorney's office. It is claimed that this was a confidential communication to the public officer and privileged under section 1881, subd. 5, of the Code of Civil Procedure, which is as follows: "5. * * * A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

The qualifying clause of the above section makes it apparent that there are some instances where the privilege does not apply. This evidence is an important circumstance in connecting Metzler with the conspiracy and it is clear that the privilege is claimed not in the public interest, but rather in the interest of the appellants. Attorney General v. Tufts, 239 Mass. 458, 131 N. E. 573, 132 N. E. 322, 17 A. L. R. 274. While we have stated that the evidence under consideration does not come within the intendment of the privileged communication sections of the Code of Civil Procedure of California, we are not to be deemed as holding that in the federal courts the existing state law as to the rules of evidence in criminal cases invariably applies. Olmstead v. U. S., 277 U. S. 438, 469, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376, and cases there cited. Appellants contend that the Costello letter was inadmissible on the ground that it was hearsay. The letter was not offered as proof of its contents, but merely to prove that Metzler was advised of the action of his county detective Lennon. As proof of that circumstance, it was admissible.

 There is no fatal variance between the indictment and the proof. The appellants contend that a variance arose because of the fact that the indictment charges a conspiracy between the twelve defendants and other "unknown" parties while the proof showed that the grand jury knew of at least two other conspirators [see Pearlman v. U. S. (C. C. A.) 20 F.(2d) 113], Brown and Shields, who should have been named in the indictment. The difficulty with this proposition is that it was not clearly raised in the trial court nor does the evidence either justify or require the conclusion that the grand jury was fully advised of the connection of Brown and Shields with the conspiracy. After Brown had testified to the facts showing his connection with the conspirators, he was asked, on cross-examination by the defendants, if he gave "practically the same testimony before the grand jury," and he replied that he did. This conclusion of the witness was not sufficiently definite to establish that the grand jury knew that Brown was a co-conspirator. Shields testified that he told the grand jury "a part" of what he testified in court. This evidence does not establish variance. The statute of limitations had not run against the conspiracy charged in the indictment, which was a continuing conspiracy. Buhler v. U. S. (C. C. A.) 33 F.(2d) 382.

There remains to consider the question of the court's instruction to the jury in regard to major and minor conspiracies. The record shows that counsel merely excepted to that portion of the charge and did not state grounds of his objection. Such an exception is insufficient to give the court the opportunity then and there to correct error, if any, and cannot be urged on appeal. Burns v. U. S., 274 U. S. 328, 336, 47 S. Ct. 650, 71 L. Ed. 1077; Sacramento Fruit Lands Co. v. Johnson (C. C. A.) 36 F.(2d) 925; State Life Ins. Co. v. Sullivan (C. C. A.) 58 F.(2d) 741. However, the instruction was not erroneous.

The other points raised by appellants have been considered but we have found no merit in them. There is ample support in the evidence for the verdict of the jury. It is not the province of this court to substitute its judgment as to the evidence and the credibility of witnesses for the judgment of the jury.

The appellants' motions for a directed verdict were properly denied.

The bill of exceptions in this case is of excessive length. Although it is in part in narrative form, it is not condensed, as required by our rule. We call attention to the statement of this court in Cossack v. United States (C. C. A.) 63 F.(2d) 511, filed February 13, 1933, with reference to the obligation of court and counsel in the preparation of proper bill of exceptions. In this case the bill of exceptions was stipulated by the parties to be correct and was thereupon settled by the court. Where the bill is not prepared in accordance with the rule of this court and of the Supreme Court we may review the case without reference to what purports to be a bill of exceptions [Tingley v. U. S. (C. C. A.) 34 F.(2d) 1; Caldwell v. U. S. (C. C. A.) 36 F.(2d) 738; Hard & Rand v. Biston Coffee Co. (C. C. A.) 41 F.(2d) 625, and numerous cases cited therein; Zurich General Accident & Liability Ins. Co. v. Mid-Continent Pet. Co. (C. C. A.) 43 F.(2d) 355; Yangtsze Rapid S. S. Co. v. Deutsch-Asiatische Bank (C. C. A.) 59 F.(2d) 8], or required it to be corrected [Fairbanks, etc., v. American, etc., Co., 276 U. S. 305, 48 S. Ct. 317, 72 L. Ed. 584; Barber Asphalt, etc., Co. v. Standard Asphalt, etc., Co., 275 U. S. 372, 48 S. Ct. 183, 72 L. Ed. 318]. We wish the bar to take notice that hereafter where it is manifest that no serious effort has been made to comply with the rules of the court with reference to preparation of bills of exceptions by reducing the evidence to narrative form and by condensation thereof, we shall feel free, upon our own motion, to ignore what purports to be the bill of exceptions, notwithstanding it is settled by the trial court and agreed to by the parties. In this connection it will be observed that the burden of preparing the bill of exceptions in proper form is upon the appellant. If he disobeys a rule of the court promulgated in order to inform him of the proper method of securing a consideration by another court of the points upon which he claims the trial court erred to his prejudice, he cannot justly complain if the court enforces the rule he has disobeyed, no matter how serious the consequences to him. Appellant's obligation should not be shifted to the appellee in the first instance, nor to the trial court in the second instance. Neither the appellee nor the trial judge should be required to weed out from the bill of exceptions matters unnecessary to be included therein. The only adequate remedy for a violation of this rule seems to be for this court to refuse to consider bills of exceptions in which appellant has manifestly ignored the frequent admonition by the Supreme Court and this court concerning the proper method of preparing bills of exceptions. After four years of admonition to the bar the Circuit Court of Appeals of the Tenth Circuit found this to be the only effective remedy. Hard & Rand, Inc., v. Biston Coffee Co. (C. C. A.) 41 F. (2d) 625, 626; Smith v. U. S. (C. C. A.) 38 F.(2d) 632; Flowers v. U. S. (C. C. A.) 38 F.(2d) 633.

[27] Where the point relied upon by the appellant is that the trial court erred in failing to instruct the jury to render a verdict for the appellant, it frequently has been said that the appellant must bring up all the evidence, but this does not prevent condensation. It does not mean that everything testified to by every witness should be separately stated verbatim or in narrative form in the bill, "but only that the purport and substance of all of it be included." Krauss Bros. Lumber Co. v. Mellon, 276 U. S. 386, 390, 48 S. Ct. 358, 360, 72 L. Ed. 620; Hursh v. Killits (C. C. A.) 58 F.(2d) 903. See, also, Coberth v. Wilson (C. C. A.) 63 F.(2d) 156, filed February 6, 1933, and cases cited. In the case of Cossack v. United States, we reversed the decision of the trial court, notwithstanding the prolixity of the record. To avoid the inference that this will be done in the future counsel should take note that we will enforce the rule in the future. In criminal cases district attorneys

should not stipulate to the correctness of bills of exceptions where this rule has been ignored, but should object to the allowance of bills of exceptions which do not conform to the rule, and trial judges should uphold such objections when well founded, otherwise the appellant may be lulled into a sense of security in reliance upon what purports to be, but is not in fact a proper bill of exceptions.

Judgment affirmed.

STONE, Circuit Judge, dissenting.